Filed 7/7/16  P. v. Jefferson CA4/2

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E063900 |
| v. | (Super.Ct.No. RIF1411960) |
| LAMONTE ALVIN JEFFERSON, | O P I N I O N |
| Defendant and Appellant. | |


APPEAL from the Superior Court of Riverside County.  Helios (Joe) Hernandez, Judge.  Affirmed.

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Barry Carlton, Sabrina Y. Lane-Erwin, Heidi Salerno, and Allison V. Hawley, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

While serving a 32-month sentence for commercial burglary (Pen. Code, § 459),[1] defendant and appellant, Lamonte Alvin Jefferson, petitioned the trial court to recall his sentence and resentence him as if he had been convicted of misdemeanor shoplifting (§§ 459.5, 1170.18, subd. (a)). Defendant stole an ink cartridge worth $24.99 from a Riverside Kmart store.

The parties agreed that defendant's commercial burglary conviction qualified as a misdemeanor shoplifting conviction. (§ 459.5 [defining shoplifting as including entering a commercial establishment during regular business hours with intent to commit or committing larceny where value of property taken or intended to be taken does not exceed $950].) The parties also agreed that, had defendant's petition been granted at the January 12, 2015, hearing on the petition, defendant would have been eligible for immediate release from prison. However, the court denied the petition on the ground defendant posed an unreasonable risk of danger to public safety. (§ 1170.18, subds. (b), (c).)

Defendant claims the court erroneously applied the preponderance of the evidence standard to its unreasonable risk of dangerousness determination. He argues the prosecution was required to prove his dangerousness to a jury beyond a reasonable doubt or, at the very least, based on clear and convincing evidence. He also claims the court

---

[1] Unspecified statutory references are to the Penal Code.

abused its discretion in finding he posed an unreasonable risk of danger to public safety under any standard of proof.  We find no error or abuse of discretion, and affirm.

## II.  BACKGROUND

On September 16, 2014, defendant pled guilty to commercial burglary (§ 459), a felony, and admitted a strike prior.  In entering his plea, defendant admitted in court that he entered a Kmart store in the City of Riverside "with the idea of taking some of their property."  The guilty plea form that defendant signed does not indicate the circumstances of the crime, but the People represent that the commercial burglary was committed on September 3, 2014, when defendant, while on active parole, left a Kmart store without paying for an ink cartridge worth $24.99.[2]  On September 16, 2014, defendant was sentenced to 16 months in prison on the burglary conviction, doubled to 32 months based on the strike prior.

On November 14, 2014, defendant petitioned the court to recall his 32-month sentence and resentence him to not more than six months in county jail, or time served. (§§ 19, 459.5, 1170.18, subd. (a).)  The People opposed the petition and requested a hearing to determine whether defendant posed an unreasonable risk of danger to public safety.  At a June 12, 2015, hearing, the court found that defendant posed an unreasonable risk of danger to public safety and denied the petition.

---

[2] In exchange for defendant's guilty plea to commercial burglary, the People dismissed two misdemeanor charges, one for theft (Pen. Code, § 490.5) and another for possessing a glass methamphetamine pipe (Health & Saf. Code, § 11364.1).

3

III.  DISCUSSION

A.  *Proposition 47, Overview of Relevant Provisions*

In the November 4, 2014, election, the voters enacted Proposition 47, "The Safe Neighborhoods and Schools Act" (Proposition 47 or the Act), and the Act went into effect on November 5, 2014.  (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1089.)  As pertinent, the Act added sections 459.5 and 1170.18 to the Penal Code.  (*People v. Rivera*, *supra*, at p. 1091.)  Section 459.5 defines "shoplifting" as "entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)."  (§ 459.5, subd. (a).)  Shoplifting must be punished as a misdemeanor unless the defendant has one or more disqualifying prior convictions.  (*Ibid*.)[3]  Generally, misdemeanors are punishable by imprisonment in the county jail for not more than six months.  (§ 19.)

Under section 1170.18, subdivision (a), a person who is currently serving a sentence for a felony conviction that would have been a misdemeanor under the Act may petition the court that entered the judgment of conviction to recall the person's felony sentence and resentence the person as if he or she had been convicted of the misdemeanor.  If the court determines that the defendant satisfies the criteria of section

---

[3]  For purposes of section 459.5, a prior conviction is a conviction for an offense specified in section 667, subdivision (e)(2)(C), or an offense requiring registration as a sex offender under section 290, subdivision (c).  Persons with one or more such prior convictions may be punished pursuant to section 1170, subdivision (h).

1170.18, subdivision (a), the court is required to recall the felony sentence and resentence the defendant to the misdemeanor sentence, "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).)

B. *Defendant Was Not Entitled to a Jury Trial on the Dangerousness Finding, and the Proper Standard of Proof Was Preponderance of the Evidence*

Defendant first claims he had a right to a jury trial on the dangerousness finding, and that the prosecutor had the burden of proving his dangerousness beyond a reasonable doubt or, at the very least, by clear and convincing evidence. We disagree.

Other courts have rejected this claim in the context of Proposition 36, the Three Strikes Reform Act of 2012 (Proposition 36) and its resentencing provision, section 1170.126. (*People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1302-1305 (*Kaulick*); *People v. Flores* (2014) 227 Cal.App.4th 1070, 1075-1076.) Like section 1170.18, which requires the court not to recall a defendant's felony sentence and resentence the defendant under Proposition 47 if the court finds the defendant would pose an unreasonable risk of danger to public safety (§ 1170.18, subds. (b), (c)), section 1170.126 includes a similar dangerousness provision (§ 1170.126, subd. (f)). The reasoning of *Kaulick* and *Flores* applies with equal force to dangerousness determinations under Proposition 47, regardless of whether "'unreasonable risk of danger to public safety'" has the same meaning in sections 1170.18 (Proposition 47) and 1170.126 (Proposition 36). (See § 1170.18, subd. (c) [defining "'unreasonable risk of

5

danger to public safety'" "[a]s used throughout this Code"]; *People v. Cordova* (June 24, 2016, H041050) ___ Cal.App.4th ___ [2016 Cal.App. Lexis 509 [definition of "unreasonable risk of danger to public safety" in § 1170.18, subd. (c) applies to dangerousness determinations under both Propositions 47 and 36].)

Defendant's argument begins with the settled principal that, """"under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence."""" (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1302, quoting *Cunningham v. California* (2007) 549 U.S. 270, 281; *People v. Towne* (2008) 44 Cal.4th 63, 74.) A finding of dangerousness under Proposition 36 or 47 is not a fact that exposes the defendant to a greater potential sentence, however. If the court finds the defendant would pose an unreasonable risk of danger to public safety if he is resentenced under Proposition 36 or 47, the defendant "simply finishes out the term to which he or she was originally sentenced." (*Kaulick*, *supra*, at p. 1303 [Proposition 36].)

Additionally, because Propositions 36 and 47 only allow the defendant's original sentence to be modified downward, not upward, any facts found in a proceeding under section 1170.18 or 1170.126, including the defendant's dangerousness, do not implicate the defendant's Sixth Amendment rights. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1303-1305.) Thus, the principle established by the *Apprendi* line of cases, that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be subjected to a jury, and proved beyond a reasonable doubt" (*Apprendi v. New Jersey*

6

(2000) 530 U.S. 466, 490) is inapplicable to dangerousness determinations under Propositions 36 and 47 (*Kaulick*, *supra*, at pp. 1303-1305).

Further, a defendant has no constitutional right to be resentenced under Proposition 36 or 47. Rather, the resentencing provisions of Propositions 36 and 47 are acts of lenity on the part of the electorate. (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1304 [Proposition 36].) They do not call for the "wholesale resentencing of eligible petitioners." (*Ibid*.) Thus, there is no Sixth Amendment *or other* constitutional right to have the prosecution prove dangerousness to a jury beyond a reasonable doubt. (*Id.* at pp. 1304-1305; see *People v. Rivas-Colon* (2015) 241 Cal.App.4th 444, 451-452 [following the reasoning of *Kaulick* and holding that a Proposition 47 defendant has no right to a jury trial on the value of the property stolen, a question essential to the defendant's eligibility for resentencing under Proposition 47].)

Lastly, the proper standard of proof on a dangerousness finding is the default standard of proof by a preponderance of the evidence. (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1305; *People v. Flores*, *supra*, 227 Cal.App.4th at p. 1076.) Evidence Code section 115 provides that, "[e]xcept as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." No statute or case law provides for a higher standard of proof, including proof by clear and convincing evidence.

Defendant maintains that a defendant whose felony offense satisfies the eligibility requirements of section 1170.18, subdivision (a) is *entitled* to have his or her felony sentence recalled; the misdemeanor sentence is the *presumptive* sentence; and the court is

7

authorized to resentence the defendant to the original felony sentence *only* upon proof beyond a reasonable doubt of the *additional factor* of dangerousness. Nothing in the language of section 1170.18 or in the other Penal Code provisions added or amended by Proposition 47 supports this interpretation. (See *Kaulick*, *supra*, 215 Cal.App.4th at p. 1303 [rejecting similar argument in Proposition 36 context].)

C. *The Court Did Not Abuse Its Discretion in Finding Defendant Posed an Unreasonable Risk of Danger to Public Safety*

Defendant claims that, under any standard of proof, the court abused its discretion in finding he posed an unreasonable risk of danger to public safety. Again, we disagree.

1. Relevant Legal Principles and Standard of Review

For purposes of Proposition 47, an "unreasonable risk of danger to public safety" means "an unreasonable risk that the petitioner will commit a new violent felony" described in section 667, subdivision (e)(2)(C)(iv). (§ 1170.18, subd. (c).) These violent felonies are known as "super strikes" and include murder, attempted murder, solicitation to commit murder, assault with a machine gun on a police officer, possession of a weapon of mass destruction, and any serious or violent felony punishable by death or life imprisonment. (Couzens & Bigelow, Proposition 47: "The Safe Neighborhoods and Schools Act" (Feb. 2016) pp. 77, 124-125, Appendix V [complete listing of super strikes described in § 667, subd. (e)(2)(C)(iv) <http://www.courts.ca.gov/documents/Prop-47-Information.pdf>[as of July 7, 2016].)

8

In determining whether there is an unreasonable risk that the defendant will commit a super strike, the court may consider: "(1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes. [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated. [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b)(1)-(3).)

We review a dangerousness finding for an abuse of discretion, given that the court is statutorily required to determine dangerousness "in its discretion." (§ 1170.18, subd. (b).) "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]'" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.) The abuse of discretion standard "involves abundant deference" to the court's ruling. (*People v. Jackson* (2005) 128 Cal.App.4th 1009, 1018.)

2. Relevant Background

Before the June 12, 2015, hearing on defendant's dangerousness, the parties submitted briefs on whether defendant posed an unreasonable risk of danger to public safety. Evidence concerning defendant's dangerousness, or lack of dangerousness, was included in the briefs, and both sides presented additional argument at the hearing. The

9

pertinent evidence and argument presented on the question of defendant's dangerousness are set forth here.

(a) *The People's Evidence*

(i) The 1997 Home Invasion Robbery

When he was 20 years old in 1997, defendant was a principal in an armed, home invasion robbery. As a result, he was convicted of residential robbery, assault with a firearm, battery with serious bodily injury, and unlawful taking of a vehicle. (Pen. Code, §§ 211, 245, subd. (a)(2), 243, subd. (d); Veh. Code, § 10851, subd. (a).) The jury found he personally used a firearm in each count, and personally inflicted great bodily injury in the robbery and assault counts. (Pen. Code, §§ 12022.5, 12022.7.)

The 1997 crimes occurred in San Diego and their circumstances are briefly described in *People v. Jefferson* (Sept. 30, 1998, D029498) [nonpub. opn.]: "Jefferson and three other masked men entered an apartment where the victim, Laura Mootry, was staying. The apartment belonged to her boyfriend. The men were looking for money and expensive tire rims which belonged to the boyfriend. Eventually the men left, taking a VCR, a gold chain and the tire rims. [¶] During the robbery Mootry was repeatedly struck on the head by the robbers. They also drug her around the apartment by her hair. Mootry was rendered unconscious at one point and ultimately required 13 stiches to close her wounds. [¶] As the robbers were leaving the apartment, they took Mootry's car keys. They then took her car, which was not recovered until approximately six weeks later." (*Id.* [at pp. 2-3].)

10

## (ii)  Defendant's Prison Record and Parole Violations

For the 1997 crimes, defendant was sentenced to 16 years 8 months in prison and was released on parole in July 2011.  While in prison, he was placed in administrative segregation five times, in 1998, 2000, July 2001, October 2001, and 2006.  In the 1998, 2000, and July 2001 incidents, he was involved in melees between Crips and Bloods and ignored repeated commands to "get down" or stop fighting.  In the 1998 and July 2001 incidents, he was pepper sprayed.  In 2004, he wrote a kite indicating his loyalty to the Blood gang.  The kite stated he "keeps it Gangsta 24-7," told a "Soulja" Blood "to Death Do Us Part," and was signed, "Bulletproof Love, Black Money, South Side Soulja 4 Life, Death View Side, 59 Brim."  In October 2001, defendant threatened a correctional officer that he would "kick [the officer's] mother fucking ass" if the officer searched his cell, and in 2006, defendant gassed a correctional officer with pruno.

Defendant violated parole 10 times following his July 2011 release on parole.  He was "at large" for 226 days, between May 11, 2012 and April 14, 2014.  Twice in April 2014, he violated section 148.9, indicating he was lying about his identity in order to avoid being returned to prison on parole violations.  Defendant was still on parole when he committed the commercial burglary of the Kmart store on September 3, 2014, and was sentenced to 32 months in prison.

### (b)  *Defendant's Evidence*

Defendant's prison records showed the "RVR" or "Rules Violation Report" for the 1998 incident was dismissed; a correctional sergeant determined he was not a participant

11

in the 2000 incident, and, in the July 2001 incident, he was not alleged to be one of the inmates engaging in combat. Regarding the 2006 pruno gassing incident, he was "found guilty of a lesser, but included offense" of possessing manufactured alcohol. He emphasized his other RVR's were many years old, and he had "no RVR's" for fighting with other inmates and no physical altercations with prison staff. He was eligible for and participated in employment while in prison.

When released on parole in July 2001, defendant had an "assessment score" of 19, the lowest possible score for his commitment offense, qualifying him to be housed at a "Level 2" facility or yard. When he was sentenced to prison in 1998, his assessment score was 69. Defense counsel argued that defendant's low assessment score "speaks for itself in his level of dangerousness" and his conduct in prison. Counsel also pointed out that defendant was part of a group of 72 men who were pepper sprayed for a gang-fighting incident, and none of defendant's parole violations involved violence or injury to anyone.

Defense counsel also emphasized that defendant was sentenced to the *low term* of 16 months, doubled to 32 months, on his current conviction, because "[c]learly there was something in mitigation that the [district attorney] that pled it out in that case felt that it was not worthy of upper term times two, because he did not get six years."

In 2009, defendant married Janice Higgins, who ran a program called "Project R.A.G.E.—Release Anger and Guilt for Empowerment." He was actively involved in the R.A.G.E. program, and Ms. Higgins was committed to ensuring that he led "a clean,

12

sober and productive" life.  Defendant had a job waiting for him upon his release from prison on his current 32-month sentence.

(c) *The Court's Ruling*

In denying defendant's petition on dangerousness grounds, the court noted that defendant's "most serious" crime was the 1997 robbery, and "as robberies go" it was "one of the worst ones."  The court reasoned that defendant's 1997 robbery and related convictions, in combination with his rule violations in prison, his "string of parole violations," and his current felony conviction, showed he was likely to commit a super strike.[4]  (§§ 667, subd. (e)(2)(C)(iv), 1170.18, subd. (b)(1), (2).)

3.  Analysis

The court did not exceed the bounds of reason in determining that defendant was likely to commit a super strike if resentenced under Proposition 47.  The court reasonably determined that defendant's 1997 robbery, assault, and battery convictions, in combination with his multiple rule violations in prison and his multiple parole violations following his July 2011 release from prison, showed he was likely to commit a super strike.  Indeed, defendant personally used a firearm in the 1997 robbery, and personally inflicted great bodily injury on Mootry, the victim of the 1997 robbery.  In sum, the evidence amply supports the court's determination that defendant posed an unreasonable

---

[4] The People also presented evidence that defendant was indicted in 1995 on charges that were later dismissed, and was arrested in 2014 but not charged with a crime. At the June 12, 2015, hearing, the court made it clear that it was not considering the evidence of defendant's 1995 indictment or his 2014 arrest in denying defendant's resentencing petition on dangerousness grounds.

risk of danger to public safety, that is, that he was likely to commit a super strike, namely, murder, attempted murder, or solicitation to commit murder, if resentenced on his 2014 commercial burglary conviction under Proposition 47.

## IV.  DISPOSITION

The order denying defendant's Proposition 47 petition is affirmed.

CERTIFIED FOR PUBLICATION

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

McKINSTER

J.