Filed 7/27/23  P. v. Lynch CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>       v.<br><br>THOMAS JOSEPH LYNCH,<br><br>    Defendant and Appellant. | G061276<br><br>(Super. Ct. No. 21WF1734)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Terri K. Flynn-Peister and Kathleen E. Roberts, Judges.  Affirmed.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Thomas Joseph Lynch appeals the trial court's denial of his request for mental health diversion under Penal Code section 1001.36.[1]  The trial court denied Lynch's request on the ground he posed "an unreasonable risk of danger to public safety" if treated in the community for his mental illness.  (§ 1001.36, subds. (c)(4), (e).)  Lynch contends the trial court's finding that he posed an unreasonable risk of danger to public safety was not supported by substantial evidence, and therefore, the trial court erred by denying his request for diversion.  We disagree.  Lynch's criminal history and the circumstances underlying his current charges were considered by the trial court and provide substantial evidence for the court's finding.  We conclude the trial court acted within its discretion, and we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

I.

FACTUAL BACKGROUND[2]

In July 2020, Lynch inflicted corporal injury on Jane Doe, his then-girlfriend and cohabitant.  He was charged with one misdemeanor count of violating section 273.5, and an order restraining him from contact with Jane Doe was issued at his arraignment on June 8, 2021.

While that case was pending and with the restraining order in place, Lynch repeatedly contacted Jane Doe, appeared at her residence, and threatened her and her family.  Between June 15 and June 28, 2021, while subject to the temporary restraining order, Lynch stalked Jane Doe by following, harassing, and making credible threats to her

---

[1]  All subsequent statutory references are to the Penal Code.

[2]  The factual background is largely drawn from Lynch's plea colloquy as he pleaded guilty to certain offenses prior to a preliminary hearing and trial.

with the intent to put her in reasonable fear for her safety and the safety of her family. (§ 646.9, subd. (b).)

On June 16, 2021, Lynch made a criminal threat to John Doe, Jane Doe's roommate. (§ 422, subd. (a).) On June 28, 2021, Lynch made a criminal threat to Jane Doe (*ibid*), and he "knowingly and maliciously prevented or dissuaded her from giving testimony or attending . . . a trial or inquiry authorized by law" (§ 136.1, subd. (a)(1)).

## II.

## THE COMPLAINT

In July 2021, the district attorney filed a complaint charging Lynch with the following offenses: stalking with a restraining order in effect (§ 646.9, subd. (b); count 1), dissuading a witness by force or threat (§ 136.1, subd. (c)(1); count 2), attempt to dissuade a witness (§ 136.1, subd. (a)(2); count 3), two counts of making a criminal threat (§ 422, subd. (a); counts 4, 9), six misdemeanor counts of violating a protective order (§ 166, subd. (c)(1); counts 5, 6, 8, 10, 11, 12), and misdemeanor aggravated trespass of a dwelling (§ 602.5, subd. (b); count 7). All of the offenses were alleged to have taken place between June 15 and June 28, 2021. The complaint further alleged Lynch previously suffered two prior strike convictions (§§ 667, subd. (d), (e)(2)(A), 1170.12, subds. (b), (c)(2)(A)), as he had been convicted of kidnapping (§ 207) and aggravated assault (§ 245, subd. (a)(1)) in 1996. At arraignment, Lynch pleaded not guilty and denied the prior conviction allegations.

## III.

## LYNCH'S REQUEST FOR PRETRIAL MENTAL HEALTH DIVERSION

In January 2022, Lynch filed a request for pretrial mental health diversion. He attached to his request a report by Dr. Michelle Vorwerk, a forensic psychologist, who evaluated him for the purpose of determining whether he met the criteria for mental health diversion. The prosecution opposed his request, arguing Lynch posed an unreasonable risk of danger to public safety.

3

The trial court held a hearing on Lynch's diversion request, at which Vorwerk was the sole witness. Vorwerk diagnosed Lynch as having bipolar disorder. When she interviewed him, he displayed some manic symptoms including hyperverbal, tangential, and "rapid pressured speech." He had an elevated mood; was easily distracted; and had very grandiose thinking during the interview. He reported a history of other behaviors consistent with mania and depression. Vorwerk testified Lynch's bipolar disorder played a significant role in the charged offenses as he was experiencing manic symptoms leading up to the incidents underlying the charged offenses; his behavior was erratic, impulsive, and irrational.

Vorwerk found Lynch showed insight into his mental illness and need for treatment as he had previously pursued mental health treatment on his own in 2015 and 2018. From 2018 to the time of the offenses in 2021, Lynch was seeing a psychiatrist on an outpatient basis and taking medication. Vorwerk reviewed Lynch's medical records from his psychiatrist as part of her evaluation. Lynch's psychiatrist had diagnosed him with major depressive disorder and anxiety and was treating those conditions with medication. Vorwerk believed Lynch's psychiatrist had misdiagnosed him and therefore was not treating his condition with the most effective medication for his mental health disorder. Lynch, however, was compliant with taking his medications and had reported his mood improved because of them.

While in custody, Lynch had been prescribed an antipsychotic medication that also served as a mood stabilizer, but it was not working as he was still displaying mania. Vorwerk informed Lynch he needed to speak to his psychiatrist regarding his medication because it was clear to her the medication was not effective and needed to be changed or adjusted. Based on his responsiveness to medications in the past, Vorwerk expected Lynch to have increased improvement under a medication regimen for bipolar disorder and psychosocial or therapeutic treatment.

Vorwerk testified that in addition to having bipolar disorder, Lynch had two substance use disorders—alcohol use disorder and stimulant use disorder—which could be treated on an outpatient basis. Lynch told Vorwerk he would comply with the judge's recommendations and orders if granted mental health diversion and would engage in psychiatric and substance abuse treatment when released.

Vorwerk had reviewed Lynch's rap sheet and the police reports for the current charges. She did not believe he was likely to commit a "super strike" if granted diversion.[3] Vorwerk identified multiple factors that suggested Lynch was unlikely to engage in future violent behavior. One was Lynch's age. At 64 years old, the risk of him committing a physically violent offense was reduced. A second factor was the remoteness of his violent offenses, as they occurred more than 25 years ago, and he had not had any recent "violent contact offenses." A third factor was Lynch's insight into his mental illness. Because he had previously pursued mental health treatment in the community, he was more likely to do so in the future and comply with his medication regimen.

A risk factor Vorwerk identified was Lynch's use of alcohol and substances. The likelihood he would commit a violent offense would increase if he started drinking or using substances as this behavior had resulted in him engaging in impulsive behaviors, such as the current charges. But Lynch's access to substance abuse treatment in the community would mitigate this risk factor. In Vorwerk's opinion, a treatment plan would be sufficient to protect the community and give Lynch the treatment required to prevent future criminal conduct.

The trial court noted Lynch's arrest in 2006 and his recent incidents involved crimes against women. When the court asked Vorwerk whether this concerned her, Vorwerk responded: "Yes, there is a pattern. And I do believe that the issues he's

---

[3] As we discuss *post*, a super strike is an offense designated in section 667, subdivision (e)(2)(C)(iv), a limited subset of violent felonies.

had in the past as far as threats and violence are mostly related to women." Vorwerk believed Lynch's convictions in the 1990's also arose from a domestic violence situation. When she spoke to Lynch's stepsister regarding his history and mental health symptoms, his stepsister reported Lynch had trouble with women in the past. Vorwerk stated there seemed "to be a pattern" that would need to be addressed in Lynch's therapy.

At the hearing, the prosecution submitted Lynch's rap sheet and the police reports for his offenses in 2020 and 2021. The prosecution also read a victim-impact statement from the victim of the charged offenses, who was present in court and opposed Lynch receiving mental health diversion.

After hearing the parties' arguments, the trial court denied Lynch's request for mental health diversion. The court found Lynch had not made a prima facie case of entitlement, specifically he had not shown he could be treated in the community without a risk of danger to public safety.

IV.

PLEA PROCEEDINGS

After the trial court denied Lynch's request for diversion, he entered into a plea agreement with the prosecution. As part of the agreement, the district attorney filed a first amended complaint that added the misdemeanor charges of dissuading a witness from testifying (§ 136.1, subd. (a)(1); count 13) and domestic battery with corporal injury (§ 273.5, subd. (a); count 14) and deleted the allegations of two prior strike convictions. Lynch pleaded guilty to the following offenses in the first amended complaint: stalking with a restraining order in effect (count 1), two counts of making a criminal threat (counts 4, 9), misdemeanor dissuading a witness from testifying (count 13), and misdemeanor domestic battery with corporal injury (count 14). On the prosecution's motion, the court reduced the criminal threat conviction in count 9 to a misdemeanor and dismissed the remaining counts. The court suspended imposition of sentence and placed

6

Lynch on formal probation for four years with various terms and conditions, including he serve 364 days in county jail (with credit for 548 days).

Lynch timely appealed and the trial court granted his request for a certificate of probable cause on the issue of whether the trial court improperly denied his request for mental health diversion prior to his guilty plea.

DISCUSSION

Lynch contends the trial court erred by denying his request for pretrial mental health diversion under section 1001.36. We disagree.

I.

MENTAL HEALTH DIVERSION UNDER SECTION 1001.36

In 2018, the Legislature enacted section 1001.36 to provide diversion for defendants suffering from mental health disorders that were a significant factor in their charged offenses. (Stats. 2018, ch. 34, § 24.) The purpose of this legislation was to provide mental health treatment and support to individuals with mental health disorders "while protecting public safety." (§ 1001.35, subds. (a), (c).)

Under section 1001.36, a trial court "may, in its discretion," grant a defendant pretrial mental health diversion if the defendant satisfies the statute's eligibility requirements and the defendant is suitable for diversion. (§ 1001.36, subds. (a)–(e).) To qualify for mental health diversion, a defendant has to make a prima facie showing of six criteria: (1) the defendant suffers from a qualifying mental disorder; (2) the "mental disorder was a significant factor in the commission of the charged offense"; (3) a qualified mental health expert has opined the defendant's mental disorder will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) "the defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, former subd. (b)(1)(A)–(F)

7

[in effect at the time of Lynch's hearing].) (Stats. 2019, ch. 497, § 203.)[4] However, even if all the requirements are met, diversion under section 1001.36 is discretionary, not mandatory. (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1080.)

"If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion. [Citation.] The maximum period of diversion is two years. [Citation.] If the defendant is subsequently charged with an additional crime, or otherwise performs unsatisfactorily in the assigned program, then the court may reinstate criminal proceedings. [Citation.] 'If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion' . . . . [Citation.]" (*People v. Frahs* (2020) 9 Cal.5th 618, 627.)

We review a trial court's denial of a pretrial motion for mental health diversion for an abuse of discretion. (*People v. Moine* (2021) 62 Cal.App.5th 440, 448 (*Moine*).) The abuse of discretion standard calls for varying degrees of deference that

---

[4] Subsequent to the hearing on Lynch's request for pretrial mental health diversion, section 1001.36 was amended twice. (Stats. 2022, ch. 47, § 38; stats. 2022, ch. 735, § 1.) As the statute currently reads, the six criteria a defendant must show have been split into two categories: (1) a defendant's *eligibility* for diversion; and (2) a defendant's *suitability* for diversion. (§ 1001.36, subds. (b)–(c).) A defendant must first satisfy the eligibility requirements by showing he or she has been diagnosed with a qualifying mental disorder and it was a significant factor in the commission of the charged offense. (*Id.*, subd. (b).) If the defendant satisfies these two eligibility requirements, the court must consider the four suitability criteria in determining whether the defendant is suitable for pretrial diversion. (*Id.*, subd. (c).) The suitability factors evaluate the defendant's treatment prospects, consent to diversion, agreement to treatment, and public safety risk. (*Id.*, subd. (c)(1)–(4).) These changes do not impact our analysis because at all relevant times, a trial court could deny diversion if the defendant did not satisfy the public safety criterion.

depend on "the aspect of a trial court's ruling under review." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.) "The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Id*. at pp. 711–712, fns. omitted.) As we shall explain, we conclude the trial court's finding Lynch posed a risk to public safety if treated in the community is supported by substantial evidence and the court did not abuse its discretion by denying Lynch's request for mental health diversion.

## II.

### THE TRIAL COURT REASONABLY CONCLUDED THE PUBLIC SAFETY CRITERION WAS NOT MET

In denying Lynch's request for mental health diversion, the trial court found Lynch had satisfied or "sort of satisfied" the first five criteria in section 1001.36. The court, however, denied Lynch's request based on its finding the sixth criterion, the public safety criterion, had not been established. The parties focus on this criterion in their briefing, as will we.

The public safety criterion in section 1001.36 mandates a trial court find, before granting diversion, "[t]he defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c)(4).) By incorporating section 1170.18's definition of an unreasonable risk of danger to public safety, section 1001.36 requires a trial court to determine whether "the defendant is likely to commit an offense defined in section 667, subdivision (e)(2)(C), known colloquially as a '"super strike."'" (*People v. Bunas* (2022) 79 Cal.App.5th 840, 851, fn. 11.) The offenses designated in section 667, subdivision (e)(2)(C)(iv), include murder, attempted murder, solicitation to commit murder, certain sexually violent offenses, certain sex offenses involving children, assault with a machine gun on a police officer or firefighter, possession of a weapon of mass destruction, and any serious or

9

violent felony punishable by death or life imprisonment. Thus, "the risk of danger is narrowly confined to the likelihood the defendant will commit a limited subset of violent felonies. [Citation.]" (*Moine, supra*, 62 Cal.App.5th at p. 450.)

At the time of Lynch's hearing, section 1001.36 stated "[t]he court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate" when determining whether a defendant's treatment in the community will pose an unreasonable risk of danger to public safety. (§ 1001.36, former subd. (b)(1)(F).) "[B]y requiring the trial court to evaluate the 'risk' posed to public safety, the statutory language directs the court to perform a quintessential discretionary function" that is analyzed under the abuse of discretion standard. (*Moine, supra*, 62 Cal.App.5th at pp. 448–449.)

To qualify for mental health diversion, Lynch had the burden of establishing treatment in the community would not unreasonably risk his commission of a super strike offense. After reviewing Lynch's rap sheet and the police reports for his current offenses, the trial court found there was a risk he would commit a super strike. Explaining its ruling, the court discussed Lynch's criminal history, which included a 1989 arrest for battery; a 1993 arrest for assault with a deadly weapon (not a firearm); a 1994 arrest or conviction for possession of stolen property; a 1994 arrest for assault to commit sodomy and firearm offenses; and a 1995 misdemeanor firearm offense; throughout this time, Lynch had multiple controlled substance offenses. The court noted Lynch had prior violent felony convictions. In 1995, Lynch was charged with attempted murder, inflicting corporal injury, kidnapping, and torture, and he "pled out to" kidnapping and aggravated assault with great bodily injury, for which he received a 10-year sentence. After his release, he had an arrest for assault and battery in 2006. More recently, he had an arrest for domestic battery in 2019. Discussing the police reports for Lynch's current offenses, the court stated the reports indicated there was a domestic

10

violence incident in July 2020 witnessed by a neighbor, and in 2021, Lynch stalked Jane Doe, committed multiple violations of the protective order, and made multiple threats to Jane Doe and her family. Based on Lynch's record and the pending charges, the court found Lynch "pose[d] an unreasonable risk of danger that were he to be released, he may carry through on the many threats to kill and may attempt to kill either the victim in the case or another victim at some point."

We conclude the trial court properly determined Lynch failed to carry his burden of establishing the public safety criterion. The trial court's finding is supported by the evidence of Lynch's history of violence and criminal activity, including the charged offenses. While Lynch has not been convicted of a super strike, he has been charged with one, attempted murder. In that case in 1995, Lynch pleaded guilty to kidnapping and aggravated assault causing great bodily injury, for which he served 10 years and suffered two strike convictions. The facts underlying the current offenses are also concerning. After Lynch was charged with inflicting corporal injury on his girlfriend and a protective order was issued, he repeatedly violated the protective order, stalked her, and threatened to kill her and her family. Lynch's criminal history shows a pattern of arrests for assault and battery dating back to 1989, some of which we can discern are domestic violence offenses. As the trial court implicitly recognized, "[d]omestic violence often escalates in severity over time." (*United States v. Castleman* (2014) 572 U.S. 157, 160; see *People v. Kerley* (2018) 23 Cal.App.5th 513, 535 ["""there [is] a great likelihood that any one battering episode is part of a larger scheme of dominance and control [and] that scheme usually escalates in frequency and severity"""].)

Arguing the trial court erred in his case, Lynch relies on *Moine, supra*, 62 Cal.App.5th 440 and *People v. Williams* (2021) 63 Cal.App.5th 990 (*Williams*). Lynch's reliance is misplaced as both cases are readily distinguishable.

In *Moine*, the prosecution charged the defendant with three counts of assault and two counts of making a criminal threat based on two separate incidents in two

11

different medical offices. (*Moine, supra*, 62 Cal.App.5th at p. 444.) The defendant moved for mental health diversion and presented with his motion the opinion of two psychiatrists that he was at low risk for committing a future assault. (*Id*. at p. 446.) The trial court denied the defendant's request for diversion, finding his conduct demonstrated "he posed 'a danger to the public'" if he was treated in the community. (*Id*. at p. 447.) The Court of Appeal reversed, concluding the trial court abused its discretion in finding the defendant posed a danger to public safety. (*Id.* at p. 444.)

The Court of Appeal in *Moine* noted the defendant had four prior misdemeanor convictions but no prior violent felony convictions, "let alone a super strike felony. [Citation.]" (*Moine, supra*, 62 Cal.App.5th at p. 450.) While the charges pending against the defendant involved allegations of violence and threats of violence, they were not super strike offenses, and the circumstances of the pending charges did not support an inference he was likely to commit such an offense in the future. (*Id.* at pp. 450–451.) The *Moine* court concluded the record did not support the trial court's implied finding the defendant was likely to commit a super strike offense if he received mental health treatment in the community, given the two psychiatrists' opinions, his misdemeanor criminal history, and the circumstances of the pending charges. (*Id*. at p. 451.) The Court of Appeal found further support for its conclusion in the trial court's decision to release the defendant from custody on bail for over two years before the trial court ruled on his request for mental health diversion, as this decision indicated "the court necessarily found that [the defendant] was not likely to cause 'great bodily harm to others' if released. [Citation.]" (*Ibid.*) The appellate court found it "logically inconsistent to deny mental health diversion on the ground that [the defendant] was likely to commit a super strike offense, while simultaneously finding he was not likely to inflict great bodily injury on persons in the community." (*Ibid.*)

Similarly, in *Williams, supra*, 63 Cal.App.5th 990, the trial court denied the defendant's request for mental health diversion on the ground he posed an unreasonable

12

risk of danger to public safety. (*Id.* at p. 1000.) There, the defendant was charged with stalking after he engaged in "an unrelenting campaign of extremely vicious and threatening harassment carried out by e-mail and other means [directed at the owners of a local autobody shop] that continued daily for two years." (*Id.* at p. 993.) He was also charged with one misdemeanor count of making a criminal threat to his neighbor because he had been sending angry and threatening letters to his neighbor. (*Id.* at pp. 993–994.) The defendant had no prior criminal record. (*Id.* at p. 1003.) The Court of Appeal concluded the trial court erred in finding the defendant posed an unreasonable risk of danger to public safety. (*Id.* at p. 993.) The appellate court noted the similarities between the facts before it and *Moine* and concluded "*Moine* compels reversal." (*Williams*, at p. 1003.) The *Williams* court explained, although the defendant had made violent threats, he never assaulted anyone, and there was no evidence he owned or had access to any weapons. (*Ibid.*) The court also noted the defendant was released on bond for more than two years without incident and two mental health professionals had opined he posed a low risk to public safety. (*Ibid*.)

Here, unlike the defendants in *Moine* and *Williams*, Lynch has a criminal history that includes crimes of violence and inflicting injury. Lynch had previously pleaded guilty to kidnapping and aggravated assault causing great bodily injury—both of which are violent felonies. (§ 667.5, subd. (c)(8), (14).) Lynch's current offenses involved more than threats, as he was also charged with inflicting corporal injury on Jane Doe. Unlike the defendants in *Moine* and *Williams*, Lynch's criminal history showed access to and use of weapons; he had an arrest for assault with a deadly weapon in 1993 and firearm offenses in 1994 and 1995. Further, Lynch did not obtain pretrial release from custody, a mitigating circumstance the appellate courts found significant in *Moine* and *Williams*. While Lynch was ultimately granted formal probation, it provided greater supervision than treatment through pretrial mental health diversion. (See *People v.*

13

*Pacheco* (2022) 75 Cal.App.5th 207, 214 ["[i]n theory," felony probation provides more motivation than mental health diversion].)

Based on Lynch's current offenses, his criminal history, and repeated failure to rehabilitate, the trial court could reasonably find he posed a risk of committing a super strike offense if he received mental health treatment in the community. (See *People v. Pacheco, supra*, 75 Cal.App.5th at pp. 209, 214 [trial court acted within its discretion in denying the defendant's request for mental health diversion based on a finding the defendant posed an unreasonable risk of danger to public safety]; cf. *People v. Jefferson* (2016) 1 Cal.App.5th 235, 245 [no abuse of discretion in determining defendant was likely to commit a super strike given his prior robbery, assault, and battery convictions, parole violations, and current offenses]; *People v. Hall* (2016) 247 Cal.App.4th 1255, 1265–1266 [affirming denial of resentencing under section 1170.18's definition of dangerousness based on defendant's decade long criminal behavior that was becoming increasingly violent].) In sum, we conclude the trial court did not abuse its discretion by denying Lynch's request for mental health diversion.


DISPOSITION

The judgment is affirmed.


MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.

14