Filed 11/16/23  P. v. Sandher CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>JOGA SINGH SANDHER,<br><br>　　　Defendant and Appellant. | A166128<br><br><br>(Contra Costa County<br>Super. Ct. No. 000394-7) |

**MEMORANDUM OPINION**

Joga Singh Sandher appeals the denial of a recommendation by the Secretary of the Department of Corrections and Rehabilitation (Secretary) to recall his sentence under former Penal Code section 1170, subdivision (d)(1).[1] We affirm.

In 2000, Sandher attended a service at the Sikh Center of the San Francisco Bay Area.  He asked the center's president, Ajmer Singh Mahli, for a chance to speak to the congregation, but Mahli said no.  Believing he'd been instructed by the "Tenth Guru" to punish Mahli for lying, Sandher retrieved a semiautomatic rifle and ammunition from the trunk of his car and returned

---

[1] We resolve this case by memorandum opinion (Cal. Stds. Jud. Admin., § 8.1) and recite only those facts necessary to resolve the issue before us. Undesignated statutory references are to the Penal Code.  Section 1170, subdivision (d)(1) has been modified and renumbered as section 1172.1. (*People v. Braggs* (2022) 85 Cal.App.5th 809, 817–818.)  For clarity, we cite to the current provision.

to the center. Kneeling worshippers scattered when he fired a round and exclaimed, "I will kill you all." He chased after Mahli and shot him in the head, killing him. Sandher then fired into the crowd, striking a worshipper in the leg. Ultimately, worshippers subdued Sandher until police arrived. A jury convicted Sandher of first degree murder and assault with a firearm, and it found true an allegation that he discharged a firearm in committing the murder. The trial court sentenced him to 25 years to life each for the murder and the firearm enhancement — a total of 50 years to life.

In March 2020, the Secretary sent a letter to the trial court recommending it recall and resentence Sandher under section 1172.1. In opposition, the district attorney argued the court should not dismiss the firearm enhancement because Sandher posed an " 'unreasonable risk of danger to public safety' " under section 1170.18, subdivision (c). Sandher supported the Secretary's recommendation and asked the court to dismiss, strike, or make the enhancement concurrent.

At the June 2022 hearing on the Secretary's recommendation, Dr. Teo Ernst, an expert in forensic psychology, testified for the defense. Ernst opined Sandher had bipolar disorder with psychotic features at the time of the murder, meaning that he experienced manic symptoms nearly every day for at least one week. Symptoms could include hallucinations and delusions. Ernst opined the death of Sandher's father in 1999 triggered the symptoms. Ernst noted Sandher was experiencing delusions at the time of the murder, claiming the "Tenth Guru" was "speaking to him and instructing him to grab his gun and punish Mr. Mahli," yelling " 'This is for the Guru' " during the shooting. Ernst also testified Sandher demonstrated a manic episode in prison between 2005 and 2006.

2

On cross-examination, Ernst agreed Sandher could have recurring manic episodes if his bipolar illness were left untreated. He also acknowledged Sandher assaulted a guard during the manic episode in prison, but he noted Sandher thereafter resumed taking medication and "the vast majority of his manic symptoms reduced." Ernst conceded, however, that Sandher's delusion about the "Tenth Guru" telling him to kill Mahli persisted into 2012, "six years after achieving psychiatric stability on psychiatric medications." Ernst found the delusion's persistence "unexpected" because "delusions resulting from mania often resolve once an individual is psychiatrically stabilized." And Ernst admitted, if Sandher were to stop taking his medication again, it "would certainly increase the risk that he would become manic, psychotic, and engage in violence."

In August 2022, the trial court announced its decision. It concluded Sandher was an "unreasonable risk of danger to public safety as defined in [section] 1170.18(c)" and denied the recommendation to recall and resentence him. The court noted Sandher would need to continue treatment throughout his life, and symptoms would recur if he discontinued medication. If he did, there would be a "high risk" of "physical violence toward other people" — with Sandher's assault of the prison guard as an example. The court also noted testimony that it would be "possible for someone to develop delusions about not needing to continue to take medication." Relatedly, the court noted Sandher's core delusion — that the "Tenth Guru" ordered him to shoot Mahli — persisted for six years after he had achieved stability on psychiatric medications. Ernst could not explain why the delusion endured despite the stabilization of other symptoms. And, the court concluded, the "absence of explaining why this . . . murderous heart of this delusion persisted for six

3

years . . . is what makes the defendant an unreasonable risk of danger to public safety."

On appeal, Sandher contends the trial court erred in finding him an unreasonable risk of danger to public safety. We review the court's decision for abuse of discretion (*People v. Jefferson* (2016) 1 Cal.App.5th 235, 242–243) and find none.

When the Secretary recommends recall and resentencing, there "shall be a presumption" in favor of doing so unless the trial court "finds the defendant is an unreasonable risk of danger to public safety, as defined in subdivision (c) of Section 1170.18." (§ 1172.1, subd. (b)(2).) Section 1170.18, subdivision (c) defines "unreasonable risk of danger to public safety" as "an unreasonable risk that the petitioner will commit a new violent felony" within the meaning of section 667, subdivision (e)(2)(C)(iv). Those offenses — known as super strikes — include, among others, any homicide and any serious or violent felony offense punishable in California by life imprisonment or death. (*Ibid.*; *People v. Braggs, supra,* 85 Cal.App.5th at p. 818.)

At the hearing, there was evidence of Sandher's mental illness, his assault of a prison guard after he stopped taking his medication, the risk of further violence if he did so again, and the inexplicable persistence of his delusion — that the "Tenth Guru" ordered him to kill Mahli — for years after he had supposedly achieved stability on psychiatric medication. Given this record, we cannot conclude the trial court abused its discretion in finding Sandher was an unreasonable risk of danger to public safety. (*People v. McCallum* (2020) 55 Cal.App.5th 202, 211.)

Sandher contends he cannot pose an unreasonable risk of danger to public safety because — given his 25-year-to-life sentence for murder — a recall of his sentence on the firearm enhancement would not have resulted in

4

his release, a meaningful reduction of his sentence, or the advancement of his parole eligibility date. Moreover, he characterizes the trial court as "finding that recalling [his] sentence would *likely result* in [him] committing a super strike offense in the community." His first argument is irrelevant as none of the statutory provisions at issue ask the court to consider a defendant's release into the community as part of its analysis. (See *People v. Braggs*, *supra*, 85 Cal.5th at p. 818.) His second point is incorrect. In finding Sandher an unreasonable risk of danger to public safety, the court said nothing about him being released to the community; indeed, the court explicitly observed the issue of Sandher's "release to the public" was not at issue in the hearing. Moreover, in arguing a dangerousness finding must be predicated upon evidence a defendant is likely to commit a super strike offense *if released into the community*, Sandher relies on *People v. Moine* (2021) 62 Cal.App.5th 440, 451. *Moine* concerns mental health diversion under section 1001.36 and is inapposite. Sandher's reliance on *People v. Bush* (2016) 245 Cal.App.4th 992 and *People v. Hall* (2016) 247 Cal.App.4th 1255 — both of which concerned Proposition 47, the Safe Neighborhoods and Schools Act — is similarly unavailing.

## DISPOSITION

The trial court's order is affirmed.

5

_____
Rodríguez, J.

WE CONCUR:


_____
Tucher, P. J.


_____
Petrou, J.

A166128
*People v. Sandher*