Filed 12/18/24  P. v. Bathe CA3

<u>NOT</u> <u>TO</u> <u>BE</u> PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100538 |
| Plaintiff and Respondent, | (Super. Ct. No. 22FE017892) |
| v. | |
| JARROD LEWIS BATHE, | |
| Defendant and Appellant. | |

Defendant Jarrod Lewis Bathe pleaded no contest to attempted robbery. The trial court sentenced defendant to four years in state prison. On appeal, defendant argues the trial court erred in denying his request for pretrial mental health diversion under Penal Code[1] section 1001.36. We will affirm.

## I.  BACKGROUND

The information charged defendant with attempted robbery. (§§ 664/211.) The information further alleged defendant used a deadly weapon and had a prior strike conviction. (§§ 12022, subd. (b)(1), 667, subds. (b)-(i), 1170.12.)

---

[1] Further undesignated statutory references are to the Penal Code.

1

On a night in October 2022, the victim returned home from the grocery store around 11:00 pm. She parked in the alley behind her apartment complex, took her groceries out of the car, and went to the rear door that leads into her complex. At that time, defendant (wearing a red sweater) approached her and asked her to give him her phone. She refused, at which point defendant pulled out a large black handled knife from a sheath on his waistband. The victim was afraid, left her groceries behind, and ran to her car where she called her boyfriend and the police.

When officers responded, they found defendant on a mattress in the alley under a blanket. He was not wearing a red sweater, but otherwise fit the description of the suspect. The victim identified the defendant in a field showup. Officers located a knife against the wall in the alleyway between his mattress and the wall.

The next day, defendant told officers he saw a man with a red sweater the day before. Defendant did not hear anyone scream and did not know the man had robbed someone. Defendant denied the knife officers found belonged to him and blamed the other man for leaving it there.

In February 2023, during the pendency of the case, a court-appointed psychologist interviewed defendant to determine whether he was presently mentally competent. The psychologist determined defendant exhibited substantial signs of malingering and had the impression defendant was exaggerating his symptoms to avoid the consequences for his pending legal matters.

In September 2023, defendant brought a petition for diversion under section 1001.36. In that petition, defendant asserted he had a history of mental illness and attached prison documents evidencing that diagnosis. Defendant also attached a proposed treatment plan stating that defendant would be assessed for safety within the first week of his treatment, but it did not contain any representations about defendant's potential dangerousness to the community during his treatment.

The district attorney opposed the request for diversion both because defendant was ineligible and because he was unsuitable for diversion. In terms of eligibility, the district attorney argued there was no nexus between defendant's crime and his mental illness. For example, there was no indication in the police report that defendant appeared to be suffering from mental illness since "[h]is actions were methodical and deliberate." When the victim refused to give him her phone, his response was to remove a knife from a sheath on his hip to frighten the victim so she would give him her phone.

As to suitability, the district attorney argued defendant was a danger to the community. For example, during defendant's prior robbery in 2017, he pulled out a machete-type knife when the owner of the store confronted him while defendant was taking $650 worth of merchandise from the victim's store. The district attorney also contended the current armed robbery was "even more disconcerting" as defendant "approached a lone female and demanded her cell phone and then brandished a knife when she refused to give him the phone." The district attorney questioned if defendant was placed in a room and board facility whether he would use a weapon against another resident.

Defendant's prior criminal history spanned from 2005 to the instant crime in 2022 and included three convictions for burglary, three convictions for resisting, delaying, or obstructing a peace officer, convictions for an attempted and completed taking of a motor vehicle, a conviction for evading a police officer in a motor vehicle, and two convictions for possession of narcotics. (§§ 459, 148, subd. (a)(1), § 664/Veh. Code, §§ 10851, 2800.1, Health & Saf. Code, § 11377, subd. (a).)

The trial court ruled, "I don't think [defendant] would have any compunction to lie to law enforcement and concoct a story." After listing his three prior convictions for resisting arrest and one for evading police in a car, the trial court stated, "I don't take this to be someone who would feel as though, 'I'm being asked by law enforcement, I better be forthcoming.' I think he concocted a story here where some other dude did it. And, . . . so, [defendant said,] 'I . . . never heard anybody screaming but heard it when [someone said it

3

was] my knife.  I think, [defendant], this was not mental illness at play.  I'm not discounting that he has a schizophrenia diagnosis.  I think you've pointed out that the report of Dr. Nakagawa about competency would be somewhat different consideration, but . . . I believe that there is clear and convincing evidence here, . . . , that in part, . . . , based on conduct here, his statement to law enforcement, . . . , and the fact that he has done a robbery for the use of a weapon . . . suggests that this is more garden variety robbery -- attempted robbery than it is a manifestation of his mental illness because living in desperation in the community as a homeless person without income . . . but I do also think that there is a danger to the community that he has no compunction but to use a weapon when it would suit his need to try to get prerogative.[2]  And for those reasons, . . . the Court is finding him both ineligible and unsuitable for the grant of diversion."

Defendant pleaded no contest to attempted robbery (§§ 664/211) and admitted his prior conviction.  The trial court sentenced him to four years in state prison.

Defendant filed a timely notice of appeal.

## II.  DISCUSSION

Defendant argues the trial court abused its discretion both by finding him ineligible and unsuitable for diversion.  We conclude substantial evidence supports the trial court's finding that defendant was not suitable for diversion because he posed an unreasonable risk to public safety.  Based on this conclusion, there is no need to address defendant's other argument that the trial court erred by finding he was also ineligible for diversion.

"[S]ection 1001.36, subdivision (b) provides that a defendant is eligible for pretrial diversion if two criteria are met.  First, the defendant has been diagnosed with a mental

---

[2]  We were initially puzzled by the trial court's choice of the word "prerogative."  Merriam Webster's Dictionary defines it to mean "an exclusive or special right, power, or privilege." (Merriam-Webster's Collegiate Dict. (11th ed. 2011) p. 981.)  "Privilege," in turn, is a synonym of prerogative and means "a right or immunity granted as a peculiar benefit, advantage, or favor."  (*Id.* at p. 988.)  Viewed in that light, the trial court found defendant has no compunction to using weapons when it suits his need to get an advantage.

4

disorder, such as the one with which defendant was diagnosed, within the last five years by a qualified mental health expert. [Citation.] Second, the 'defendant's mental disorder was a significant factor in the commission of the charged offense.' [Citation.] 'If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense.' " (*People v. Graham* (2024) 102 Cal.App.5th 787, 795.)

"If a defendant meets these eligibility requirements, the court also must find that the defendant is suitable for pretrial diversion based on satisfaction of the following criteria: '(1) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment. [¶] (2) The defendant consents to diversion and waives the defendant's right to a speedy trial . . . . [¶] (3) The defendant agrees to comply with treatment as a condition of diversion . . . . [¶] (4) The defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community.' " (*People v. Graham*, *supra*, 102 Cal.App.5th at p. 795.)

An "unreasonable risk of danger" to public safety means " 'an unreasonable risk that the petitioner will commit a new violent felony' within the meaning of section 667, subdivision (e)(2)(C)(iv)." (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149 (*Whitmill*).) An unreasonable risk of danger to public safety is an unreasonable risk that the defendant will commit a new "super strike," including, as relevant here, any homicide offense, including attempted homicide, or any serious or violent felony punishable by life imprisonment or death. (§§ 1170.18, subd. (c), 667, subd. (e)(2)(C)(iv); see also *People v. Moine* (2021) 62 Cal.App.5th 440, 449 (*Moine*).) In making this decision, "[t]he court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and

criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (c)(4).)

We review a trial court's ruling on a petition for pretrial mental health diversion for abuse of discretion. (*People v. Graham*, *supra*, 102 Cal.App.5th at p. 795.) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." (*Moine*, *supra*, 62 Cal.App.5th at p. 449.)

Defendant relies on *Moine* and *Whitmill* where the appellate courts concluded the trial courts abused their discretion in finding those defendants posed an unreasonable risk to public safety. (*Moine*, *supra*, 62 Cal.App.5th at p. 451; *Whitmill*, *supra*, 86 Cal.App.5th at p. 1150.) Neither case assists defendant.

In *Moine*, the defendant had no prior violent record but got into a fistfight with another patient at an urgent care facility and a year later made a verbal threat to shoot an urgent care worker. (*Moine*, *supra*, 62 Cal.App.5th at pp. 444-445, 450.) After defendant threatened the worker, he immediately apologized, and did so "profusely." (*Id.* at p. 445.) Two psychiatrists held the opinion he posed a low risk for future assault. (*Id.* at p. 446.) In fact, defendant had been released upon bond prior to trial, in part based on the trial court's finding he was not likely to cause great bodily harm to others if released. (*Id.* at p. 451.) The appellate court concluded these facts did "not support the trial court's implied finding that [the defendant] was likely to commit a super strike offense if he received mental health treatment in the community." (*Ibid.*)

In *Whitmill*, the 61-year-old defendant, who also had no prior violent record, negligently fired a single shot into the air. (*Whitmill*, *supra*, 86 Cal.App.5th at pp. 1142, 1151.) The defendant then threw away his weapon and ran away from any further confrontation. (*Id.* at pp. 1143, 1151.) He peacefully came forward at law enforcement's request to be arrested. (*Id.* at p. 1151.) Like the defendant in *Moine*, his psychologist opined the defendant would not pose an unreasonable risk of danger to public safety if he

6

were treated in the community.  (*Id.* at pp. 1144, 1145.)  The *Whitmill* court concluded defendant's "compliant nonviolent behavior after negligently firing one shot into the air mitigates any inference that appellant is likely to commit a super-strike offense in the future."  (*Id.* at p. 1154.)

Here, the facts stand in contrast to those two cases.  First, unlike in *Whitmill* and *Moine*, defendant has a prior violent record.  Second, the crime defendant is charged with (attempted robbery with a knife) is also violent.  Third, there is no evidence from a psychiatrist indicating that defendant would not present a danger to public safety if he were treated in the community.

The record reflects that defendant is a violent man.  He is willing to pick up a machete or brandish a knife if it suits his purposes to steal another person's property.  During the robbery he committed in 2017, he pulled out a "machete type knife" when the victim of the robbery confronted him for stealing $650 worth of merchandise from the victim's business establishment.  This conduct is not similar to a fistfight, a threat, or shooting a gun negligently in the air.  To the contrary, it involves direct and potentially deadly violence aimed at his victim and supports the trial court's implicit finding defendant posed an unreasonable risk that he would commit the super-strike offense of homicide or attempted homicide if treated in the community.

During the instant crime, defendant again demonstrated his willingness to engage in violent conduct.  He confronted a lone woman in a back alley in the middle of the night, who was carrying her groceries into her home, and demanded she give him her phone.  When she refused, he pulled out a large black knife from his waistband frightening her and causing her to drop her groceries, and flee to the safety of her car where she used her phone to call for help.

In addition, the district attorney opposed defendant's request for diversion.  As we have already described, the district attorney asserted defendant was both ineligible as his

current crime had no nexus to his mental illness, and he was unsuitable because he was a danger to public safety.

Finally, nothing in the record or the proposed diversion treatment plan suggested defendant would not be a danger to society if treated in the community. Instead, the plan proposed to assess defendant for safety *after* his treatment began.

The trial court properly considered the opinion of the district attorney, the terms of the treatment plan, and defendant's prior violent record. It was not required to find defendant had already committed a super strike in order to conclude he would pose an unreasonable risk of committing another super strike if he were released for treatment in the community. (*People v. Hall* (2016) 247 Cal.App.4th 1255, 1266.) In sum, the court's finding that defendant would pose an unreasonable risk of danger to public safety, that is, he posed an unreasonable risk he would commit a homicide or attempted homicide, is reasonable and supported by the evidence. (See *People v. Jefferson* (2016) 1 Cal.App.5th 235, 245.)

## III. DISPOSITION

The judgment is affirmed.


  /s/                          
WISEMAN, J.[*]

We concur:


  /s/                          
DUARTE, Acting P. J.


  /s/                          
KRAUSE, J.

_____

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.